UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

THOMAS LUNDY,

                 Plaintiff,

v.

UNKNOWN OTTO et al.,

                 Defendants.

_____/

Case No. 2:22-cv-42

Honorable Maarten Vermaat

## **OPINION**

This is a civil rights action brought by a state prisoner. Plaintiff previously sought and was granted leave to proceed *in forma pauperis* (ECF No. 5). Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under longstanding

tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.  Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the St. Louis Correctional Facility (SLF) in St. Louis, Gratiot County, Michigan. The events about which he complains, however, occurred at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Corrections Officer Unknown Otto, Unknown Martin, also referred to as the "Facility PREA Coordinator," Corrections Officer Unknown Ordiway, and Brenda Buchannan, a healthcare practitioner. Plaintiff has named each Defendant in the Defendant's individual and official capacity. (ECF No. 1, PageID.2.)

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

### A.      Allegations of Sexual Harassment/Abuse

Plaintiff's complaint arises out of events that took place on September 5, 6, and 11, 2020. (*Id.*, PageID.3). Plaintiff alleges that on September 5, 2020, when he was first housed in the segregation unit at URF, Defendant Ordiway made sexual comments and "advances" toward Plaintiff, including telling Plaintiff that "he was single and couldn't wait to f*** male prostitutes . . ." and asking to see Plaintiff's genitals. (*Id.*; ECF No. 1-1, PageID.11.) Defendant Ordiway again approached Plaintiff in the segregation unit on September 6, 2020, and stated, "'I hear blacks have big cocks,' while swinging his baton back and forth in a sexual suggestive manner." (*Id.*) Plaintiff filed grievances related to both incidents (ECF No. 1-1, PageID.11–12), but did not receive any written response (ECF No. 1, PageID.3).

On September 11, 2020, while still in the segregation unit, Defendant Otto entered Plaintiff's cell and grabbed Plaintiff's buttocks "in a sexual way." (*Id.*) Plaintiff was handcuffed at the time. When Plaintiff pulled away from Defendant Otto, Plaintiff "re-injured" his right hip. Plaintiff filed a grievance related to this incident as well (ECF No. 1-1, PageID.13), but was not provided with a written response (ECF No. 1, PageID.3).

Plaintiff contends that the actions of Defendant Officers Ordiway and Otto are in violation of MDOC policy and the Prison Rape Elimination Act (PREA). (*Id.*) As a result of their actions, Plaintiff has lost sleep, been unable to eat, and has had nightmares of being sexually harassed and assaulted. (*Id.*)

### B.      Requests for Mental Health Treatment and Response

Following the September 11, 2020, incident, Plaintiff submitted a mental health request due to a "sexual assault." (ECF No. 1-2, PageID.51.) Jamie Costner, LMSW (a non-party), responded and discussed Plaintiffs concerns with him. (*Id.*) In the days, months and years that followed, Plaintiff submitted several additional kites for mental health concerns. (ECF No. 1-2.)

4

Plaintiff was told on more than one occasion that kites detailing complaints of sexual harassment and abuse were forwarded to the PREA investigator. (ECF No. 1-2, PageID.42, 52, 53.) According to documents attached to Plaintiff's complaint as Exhibit B, Plaintiff was provided with mental health treatment in response to his concerns.

### C.      Requests for Medical Treatment and Response

Also following the September 11, 2020, incident, Plaintiff submitted health care kites seeking medical treatment for his injured hip, (ECF No. 1, PageID.3), and was seen by Defendant "Doc Buchanan", (ECF No. 1-2, PageID.31). Plaintiff told Defendant Buchanan about the September 11, 2020, incident, but Defendant Buchanan "downplayed" the same and did not report the incident to anyone. (ECF No. 1, PageID.5.) Plaintiff was given a shot for pain and was prescribed pain medication. (ECF No. 1, PageID.3, 5.) Both an x-ray and follow-up visit were ordered. (ECF No. 1-2, PageID.27, 31.)

Unfortunately, the pain medication given to Plaintiff has proven ineffective, and Plaintiff was not provided with the x-ray or follow-up visit as ordered. Since September 2020, Plaintiff has submitted numerous additional health care kites, requesting treatment for his injured hip and shoulder, but was told by nursing staff that Plaintiff could not see Defendant Buchanan, the facility's medical provider, because Plaintiff had failed to show up for a nursing appointment, a prerequisite to obtaining a referral. (ECF No. 1, PageID.3; ECF No. 1-2.) Plaintiff contends that this is false, and that he has appeared for every nursing appointment pertaining to the September 11, 2020, incident. (ECF No. 1, PageID.3.) In his health care kites, Plaintiff continually requests a visit with the medical provider. (*See, e.g.*, ECF No. 1-2, PageID.27–31, 33, 41, 58, 60.)

Plaintiff brings claims against Defendant Buchanan based upon her alleged efforts to "undermine" any treatment for Plaintiff's September 11, 2022, hip injury. (ECF No. 1, PageID.4.) Plaintiff asserts that Defendant Buchanan has refused to perform a thorough examination or x-ray

and has refused Plaintiff's health care kites. Plaintiff also claims that Defendant Buchanan has falsely indicated that Plaintiff has refused his health care call outs, crediting Defendant Buchanan's alleged alliance with Defendant Otto and desire to protect the MDOC from liability. (ECF No. 1, PageID.4–5.)

### D.    Allegations of Retaliation

Finally, Plaintiff claims that, after filing his PREA grievances, Plaintiff has been "harassed and degraded about [his] criminal conviction" by unnamed "staff." (ECF No. 1, PageID.3.) Unnamed "Correctional Officers" have made "homosexual jokes" toward Plaintiff, Plaintiff's mail from the IRS has been tampered with and withheld, and "the process for obtaining [Plaintiff's] sensitive information (i.e. correct social security number to receive Stimulus Payments) has been thwarted . . ." (*Id.*)

### E.    Request for Relief

As a result of the claims detailed in Plaintiff's complaint, Plaintiff seeks punitive and compensatory damages in the amount of $2.5 million for emotional distress, PTSD, and injuries to Plaintiff's hip, lower back and right shoulder. (ECF No. 1, PageID.6.) Plaintiff also asks that this Court order that prison officials cease retaliatory conduct and order that disciplinary actions be taken against the Defendants. (*Id.*)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

In liberally construing Plaintiff's complaint, Plaintiff appears to bring claims under the Eighth Amendment for sexual harassment and abuse, as well as for inadequate medical care. Plaintiff also brings claims for retaliation under the First Amendment and unidentified claims against the Facility PREA Coordinator. Each of Plaintiff's claims will be addressed in turn.

7

### A.      Eighth Amendment – Sexual Harassment/Abuse

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes. Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981). The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346). The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998). The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.*

In the context of claims against prison officials, the Sixth Circuit has repeatedly held that "isolated, brief, and not severe" instances of sexual harassment, without more, do not give rise to Eighth Amendment violations. *Jackson v. Madery*, 158 F. App'x 656, 662 (6th Cir. 2005) (finding that harassing comments, even coupled with one minor instance of sexualized touching during a search, fall short of an Eighth Amendment violation), *abrogated in other part by Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018); *Violett*, 76 F. App'x at 27 (an offer of sexual favors is not sufficient to state Eighth Amendment claim); *Johnson v. Ward,* No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) ("Johnson's allegation that Ward made an offensive sexual remark to him

does not rise to the level of a constitutional violation [as such is merely verbal abuse].”). Other courts have agreed. *See, e.g., Davis v. Goord,* 320 F.3d 346, 353 (2d Cir. 2003); *Keenan v. Hall,* 83 F.3d 1083, 1092 (9th Cir. 1996); *Purcell v. Coughlin,* 790 F.2d 263, 265 (2d Cir. 1986).

The Sixth Circuit has joined multiple other courts to conclude that even incidents of sexual touching coupled with sexual remarks do not rise to the level of an Eighth Amendment violation so long as the offensive conduct was “isolated, brief, and not severe[.]” *See Rafferty v. Trumbull Cnty., Ohio*, 915 F.3d 1087, 1095 (6th Cir. 2019) (citing *Jackson,* 158 F. App’x at 662); *e.g., Solomon v. Mich. Dep’t of Corr.*, 478 F. App’x 318, 320–21 (6th Cir. 2012) (two “brief” incidents of physical contact during pat-down searches, including touching and squeezing the prisoner’s penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson,* 158 F. App’x at 662 (correction officer’s conduct in allegedly rubbing and grabbing prisoner’s buttocks in degrading manner was “isolated, brief, and not severe” and so failed to meet Eighth Amendment standards), *abrogated in other part by Maben*, 887 F.3d 252; *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner’s claim that a male officer placed his hand on the prisoner’s buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment). However, repeated and extreme incidents may sufficiently state a claim. For example, the Sixth Circuit concluded that a prison officer’s demand that a female prisoner expose her breasts or masturbate in the officer’s presence on six occasions was not “isolated, brief and not severe,” and was sufficiently serious to state an Eighth Amendment claim that survives the defense of qualified immunity. *Rafferty*, 915 F.3d at 1095; *see also Wade v. Riker*, No. 21-2976, slip op. at p. 4 (6th Cir. Apr. 11, 2022) (citing *Rafferty*, 915 F.3d at 1096) (“An allegation—fairly construed—that a correctional officer intentionally touched a prisoner’s genitals without consent, is undoubtedly severe, no matter how ‘isolated’ or

'brief.'"); *Seltzer-Bey v. Delo*, 66 F.3d 961, 962–63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment).

### 1.    Claims Against Corrections Officer Unknown Ordiway

Plaintiff claims that Defendant Ordiway visited Plaintiff's cell on two occasions and made sexual comments and "advances" toward Plaintiff, including telling Plaintiff that "he was single and couldn't wait to f\*\*\* male prostitutes . . .", asking to see Plaintiff's genitals, and stating "'I hear blacks have big cocks,' while swinging his baton back and forth in a sexual suggestive manner." (ECF No. 1, PageID.3.) If true, Defendant Ordiway's conduct toward Plaintiff was reprehensible, but does not rise to the level of an Eighth Amendment violation. Well-established Sixth Circuit precedent dictates that sexual comments such as these, without more, are insufficient to establish an Eighth Amendment claim. Accordingly, this Court will dismiss Plaintiff's Eighth Amendment claim against Defendant Ordiway.

### 2.    Claims Against Corrections Officer Unknown Otto

Unlike Plaintiff's claims against Defendant Ordiway, which involved only sexual comments, Plaintiff avers that Defendant Otto touched Plaintiff in a sexually suggestive manner—namely, when Defendant Otto grabbed Plaintiff's buttocks on September 11, 2020. (*Id.*) However, this too is distinguishable from those cases found to be sufficiently serious to state an Eighth Amendment claim. Plaintiff does not allege that Defendant Ordiway's behavior was repeated or ongoing; Defendant Ordiway never coerced Plaintiff into engaging in sexually abusive conduct, *see Rafferty*, 915 F.3d at 1095; and Defendant Ordiway did not touch Plaintiff's genitals, *see Wade*, No. 21-2976, slip op. at p. 4. Plaintiff instead points to an "isolated, brief and not severe" incident in which Defendant Ordiway grabbed Plaintiff's buttocks, which, even when liberally

construed in Plaintiff's favor, falls short of plausibly suggesting a violation of Plaintiff's Eighth Amendment rights. See *Jackson,* 158 F. App'x at 662. Therefore, this Court will also dismiss Plaintiff's claim against Defendant Otto.

### B. Eighth Amendment – Denial of Medical Care

In prohibiting the cruel and unusual punishment against those convicted of crimes, the Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008). Obviousness, however, is not strictly limited to what is detectable to the eye. Even if the layman cannot see the medical need, a condition may be obviously medically

serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

It is difficult to assess the obviousness or seriousness of Plaintiff's medical need at this stage of the proceedings. Plaintiff alleges that he has suffered from right hip pain since September 2020, which has been unaided by pain medication. Accepting Plaintiff's allegations as true, as the Court must do at this preliminary stage of the proceedings, Plaintiff has sufficiently alleged the objective component of his claim.

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and

he must also draw the inference." *Id.* at 837. To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'" *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

Plaintiff asserts that Defendant Buchanan has denied Plaintiff medical treatment for his right hip injury and has engaged in efforts to "undermine the seriousness of [Plaintiff's] medical injury" as a result of Defendant Buchanan's desire to protect the MDOC or her colleagues. (ECF No. 1, PageID.4-5). However, Plaintiff's complaint does not contain any well-pled factual allegations to support such claims. *See Iqbal*, 556 U.S. at 678 (distinguishing between "well-pled

factual allegations," which this Court must accept as true, and "naked assertions," which this Court need not accept).

Instead, according to a health care request attached to Plaintiff's complaint, Defendant Buchanan examined Plaintiff immediately following the September 11, 2020, incident. Plaintiff acknowledges that he was provided medical treatment in the form of a shot for pain and prescription pain medication, and that an x-ray and follow-up visit were ordered. Though Plaintiff complains that the medication has proven ineffective over time and that he never received the x-ray or follow up visit, Plaintiff's factual allegations do not suggest that any of these issues were the result of deliberate indifference on the part of Defendant Buchanan.

Though this Court accepts as true that Plaintiff has been denied the opportunity to see Defendant Buchanan for follow up care, there is nothing to suggest that Defendant Buchanan was personally involved in the alleged deprivation. The factual allegations of Plaintiff's complaint and the exhibits attached thereto indicate that nursing staff—not Defendant Buchanan—made the decision to withhold a referral for follow-up care with Defendant Buchanan based upon Plaintiff's alleged refusal to appear for his scheduled nursing visits. There is no factual basis to conclude that Plaintiff's requests, answered by nursing staff, ever reached Defendant Buchanan or that Defendant Buchanan ever weighed in on any response. Accordingly, Plaintiff's allegations fall far short of stating any plausible claim against Defendant Buchanan for the denial of medical care.

### C.    First Amendment – Retaliation

Plaintiff alleges that, after initiating his PREA grievance, he has "been retaliated numerous times by staff at this facility." (ECF No. 1, PageID.3.) Plaintiff does not indicate that any named Defendant was involved in the alleged acts of retaliation.

As discussed above, it is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants. *See Twombly*, 550 U.S. at 555–61. Because Plaintiff fails to

14

name any defendant with respect to his retaliation claim, Plaintiff's retaliation claim falls far short of the minimal pleading standards under Rule 8 of the Federal Rules of Civil Procedure and is subject to dismissal. Fed. R. Civ. P. 8(a)(2) (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Yet, even if Plaintiff had named a particular defendant with respect to his claim of First Amendment retaliation, Plaintiff would nonetheless fail to state a claim.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). To set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

As to the first element of a First Amendment retaliation claim, an inmate has a right to file "non-frivolous" grievances against prison officials on his own behalf, whether written or oral. *Maben v. Thelen*, 887 F.3d 252, 265 (6th Cir. 2018). However, without analyzing whether the actions alleged by Plaintiff are sufficiently "adverse" to state a claim for retaliation, Plaintiff has provided no factual allegations that would support of the element of causation.

Retaliation is easy to allege but it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833

F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538–39 (6th Cir. 1987)); *see also Murray v. Unknown Evert*, 84 F. App'x 553, 556 (6th Cir. 2003) (discussing that in complaints screened pursuant to 28 U.S.C. § 1915A, "[c]onclusory allegations of retaliatory motive with no concrete and relevant particulars fail to raise a genuine issue of fact for trial" (internal quotation marks omitted)).

Here, Plaintiff fails to provide any facts whatsoever that would plausibly suggest that the actions by unnamed staff in harassing Plaintiff, withholding Plaintiff's mail, or thwarting Plaintiff's efforts in obtaining his correct social security number were the result of Plaintiff having filed grievances against Defendants Ordiway and Otto. Accordingly, Plaintiff's retaliation claim will be dismissed for failure to state a claim upon which relief may be granted.

### D. Unidentified Claims Against Unknown Facility PREA Coordinator

Though Plaintiff does not explicitly state the claim(s) he intends to bring against the Facility PREA Coordinator, liberally construed, it appears that Plaintiff takes issue with the Facility PREA Coordinator's failure to respond to Plaintiff's PREA grievance. (*See* ECF No. 1, PageID.3.) Plaintiff initiated a PREA grievance on September 11, 2020 (ECF No. 1-2, PageID.42), but claims that he "never received a grievance identification number or a written response per MDOC policy directive 03.03.140 HH . . ." (ECF No. 1, PageID.3). Essentially, Plaintiff complains that the Facility PREA Coordinator did not appropriately respond to Plaintiff's complaint or that the Facility PREA Coordinator failed to correct the constitutional wrongs perpetrated by others.

To the extent Plaintiff invokes a prison policy, he fails to allege a constitutional claim. Claims under § 1983 can only be brought for "deprivations of rights secured by the Constitution and laws of the United States." *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982). Section

1983 does not provide redress for a violation of a state law. *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995); *Sweeton v. Brown*, 27 F.3d 1162, 1166 (6th Cir. 1994); *see also Laney v. Farley*, 501 F.3d 577, 580–81 & n.2 (6th Cir. 2007). To demonstrate a violation of procedural due process, a plaintiff must prove the following elements: (1) a life, liberty, or property interest requiring protection under the Due Process Clause, and (2) a deprivation of that interest (3) without adequate process. *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "Without a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

Courts routinely have recognized that a prisoner does not enjoy any federally protected liberty or property interest in state procedure. *See Olim v. Wakinekona*, 461 U.S. 238, 250 (1983); *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Sweeton*, 27 F.3d at 1164; *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992). Plaintiff's allegations that the Facility PREA Coordinator violated prison policy therefore fail to raise a cognizable federal due process claim.

Moreover, government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575-76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310

F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.

Plaintiff has failed to allege that the Facility PREA Coordinator engaged in any active unconstitutional behavior in failing to provide a written response to Plaintiff's grievances. The First Amendment "right to petition the government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999); *see also Minn. State Bd. for Cmty. Colls. v. Knight*, 465 U.S. 271, 285 (1984) (holding the right to petition protects only the right to address government; the government may refuse to listen or respond). Accordingly, Plaintiff fails to state a claim against the Facility PREA Coordinator.

### E.    Official Capacity Claims

Finally, Plaintiff brings claims against each Defendant in both their individual and official capacities. (ECF No. 1, PageID.2.) For the reasons set forth below, the Court will dismiss all "official capacity" claims.

Official-capacity lawsuits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citing *Monell*, 436 U.S. at 690, n. 55). An official-capacity suit is to be treated as a suit against the entity itself. *Id*. at 166 (citing *Brandon v. Holt*, 469 U.S. 464, 471–72 (1985)); s*ee also Matthew v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). "Individuals sued in their official capacities stand in the shoes of the entity they represent," and the suit is not against the official personally. *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003); *Graham*, 473 U.S. at 165–66. Accordingly, claims

against each Defendant employed by the MDOC, (ECF No. 1, PageID.2), are treated as claims against the MDOC itself.

Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).

Sovereign immunity extends not only to the State itself, but also to "state instrumentalities," which includes the MDOC. *McCoy v. Michigan*, 369 F. App'x 646, 653 (6th Cir. 2010) (citing *Regents of Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997); *Turnboe v. Stegall*, 234 F.3d 1270 (6th Cir. 2000)). In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment. *See*, *e.g.*, *Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy*, 369 F. App'x at 653–54. Therefore, Plaintiff's "official capacity" claims seeking monetary relief are properly dismissed on grounds of immunity.

While a suit against an individual in his official capacity is ordinarily equivalent to a suit brought against the governmental entity, *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989), an official-capacity action seeking *injunctive relief* constitutes an exception to sovereign immunity, *see Ex Parte Young*, 209 U.S. 123, 159–60 (1908) (holding that Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). As the Supreme Court

has recognized, a suit under *Ex Parte Young* for prospective injunctive relief is not treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Importantly, as the Supreme Court repeatedly has recognized, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Here, Plaintiff's complaint does not allege an ongoing violation of federal law, nor does it seek relief properly characterized as prospective as Plaintiff is no longer incarcerated at the URF under the care and supervision of the named Defendants. Accordingly, the Court will dismiss Plaintiff's "official capacity" claims in their entirety.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court certifies that an appeal would not be taken in good faith.

This is a dismissal as described by 28 U.S.C. § 1915(g).

A judgment consistent with this opinion will be entered.


Dated:     November 2, 2022                          /s/ *Maarten Vermaat*
                                                     Maarten Vermaat
                                                     United States Magistrate Judge